**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LARRY HUNTE,** | : | **CIVIL ACTION NO. 1:13-CV-2676** |
| | : | |
| **Plaintiff,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DOUGLAS HOWELL, individually and in his capacity as a police officer for the Pennsylvania State Police, and CHRISTOPHER DARHOWER, individually and in his capacity as a police officer for the Carlisle Police Department,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM**

Plaintiff Larry Hunte ("Hunte") filed the instant civil rights action pursuant to 42 U.S.C. §§ 1983 and 1988 for use of excessive force in violation of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution. Presently before the court is defendant Christopher Darhower's motion for summary judgment.[1] (Doc. 8). For the reasons that follow, the court will grant the motion.

---

[1] The record does not indicate whether Hunte properly served process upon defendant Douglas Howell. To date, Corporal Howell has not entered an appearance in the instant action. Hence, the present motion for summary judgment relates only to Officer Darhower. However, the court recognizes that Corporal Howell may raise the same arguments for summary judgment. The court will issue an order to show cause directing Hunte to demonstrate proper service of process upon Corporal Howell.

## I. Factual Background & Procedural History[2]

On or about June 29, 2012, Pennsylvania State Police Corporal Douglas Howell initiated a traffic stop of Hunte's vehicle. (Doc. 9 ¶ 2). During the traffic stop, Corporal Howell believed that Hunte was behaving strangely and requested back-up assistance. (Id. ¶ 3). Officer Christopher Darhower of the Carlisle Police Department responded to the back-up request. (Id. ¶ 4). Upon arrival, Officer Darhower informed Corporal Howell that he recognized Hunte from prior incidents with the Carlisle Police Department. (Id.) In one such incident, Hunte attempted to elude police and allegedly threw down a firearm. (Id.) Corporal Howell stated that Hunte's behavior was suspicious and that he intended to perform a pat down search. (Doc. 8, Ex. A ¶ 10).

Both defendants approached the idling vehicle. (Doc. 9 ¶ 5). When Corporal Howell asked Hunte to exit the vehicle, Hunte lunged towards the driver's side door. (Id. ¶¶ 6-7). Corporal Howell then reached through the open window into the vehicle.[3] (Id. ¶ 8). Hunte began closing the window with Corporal Howell still reaching inside

---

[2] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to Hunte, the non-moving party. See *infra* Part II. The court notes, however, that Hunte's counsel failed to file any response to Officer Darhower's motion. By order dated June 16, 2014, the court expressly ordered Hunte's counsel to file such a response. (Doc. 12). Local Rule 56.1 provides that the moving party's statement of facts will be deemed "admitted unless controverted" by the opposing party.

[3] It is unclear from the record evidence whether Corporal Howell was attempting to turn off the ignition or to restrain Hunte's arms to prevent him from fleeing in the vehicle. (See Doc. 9 ¶ 8; Doc. 8, Ex. A ¶ 14; id., Ex. B at 4).

the vehicle. (Id. ¶ 9). Officer Darhower believed that Hunte intended to trap Corporal Howell in the vehicle and attempt to drive away. (Id. ¶ 10). Officer Darhower produced his taser and gave Hunte several verbal warnings to roll down the window and exit the vehicle. (Id. ¶ 11). When Hunte continued to resist, Officer Darhower deployed the taser in drive stun mode to Hunte's lower chest and wrist. (Id.)

Hunte was immediately incapacitated, and Officer Darhower continued to give loud verbal commands to open the door. (Doc. 8, Ex. A ¶¶ 22-23). After finally exiting the vehicle, Hunte continued to ignore verbal commands, but Corporal Howell eventually placed Hunte in handcuffs and patted him down. (Id. ¶ 24-28). Officer Darhower removed the taser probes and photographed the impact areas. (Id. ¶ 29). Hunte stated that he did not sustain any injuries and refused medical treatment. (Id. ¶ 30; Doc. 9 ¶ 12). Corporal Howell took Hunte into custody and Officer Darhower had no further contact with Hunte. (Doc. 8, Ex. A ¶ 31).

Hunte filed the instant action against Corporal Howell and Officer Darhower in the Cumberland County Court of Common Pleas on October 3, 2013. (See Doc. 1, Ex. A). Hunte filed suit pursuant to 42 U.S.C. §§ 1983 and 1988 for use of excessive force in violation of the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution and Pennsylvania common law. (Id.) Officer Darhower removed the action to federal court on October 30, 2013 with the concurrence of the Pennsylvania State Police. (Doc. 1 ¶ 6). The court held an initial case management conference on December 16, 2013 and set April 15, 2014 as the deadline for discovery. (Doc. 7). According to

Officer Darhower, Hunte's counsel failed to engage in any discovery whatsoever.[4] (Doc. 10 at 1, 3). Hunte's counsel neither served his Rule 26 disclosures, nor requested any discovery or depositions. (Id.) The evidence of record consists entirely of documents produced by Officer Darhower in compliance with Rule 26.

Officer Darhower filed the instant motion for summary judgment on May 15, 2014. (Doc. 8). Officer Darhower contends that summary judgment is appropriate in this case because Hunte has failed to bring forth any evidence in support of his claim and Hunte's claims fail as a matter of law. Hunte's counsel failed to file a brief in opposition to this motion. By order dated June 16, 2014 (Doc. 12), the court alerted Hunte's counsel to Local Rule 7.6, which provides that a party who fails to file a brief in opposition to a motion "shall be deemed not to oppose such motion." L.R. 7.6. The court also directed Hunte's counsel to file a brief in opposition by June 23, 2014. (Doc. 12). Hunte's counsel did not file any brief in compliance with this new deadline. Accordingly, the motion is deemed unopposed and is ripe for disposition. See FED. R. CIV. P. 56(e); Blasi v. Attorney Gen., 30 F. Supp. 2d 481, 484 (M.D. Pa. 1998) ("[T]he district court may not grant a motion for summary judgment . . . solely because the motion is unopposed; such motions are subject to review for merit."). The court will proceed with a review of the merits of Officer Darhower's motion.

---

[4] Counsel for Officer Darhower notes that he received an email from Hunte's counsel on March 8, 2014, in which counsel indicated that he may seek an extension of deadlines. (Doc. 10 at 3 n.3). No extension was ever requested.

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only when "there is no genuine dispute as to any material fact" and a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

## III. Discussion

Hunte asserts a claim against Officer Darhower under Section 1983 for use of excessive force in violation of his constitutional rights under the Fourth, Eighth, and Fourteenth Amendments. Officer Darhower argues that Hunte has failed to present any evidence in support of his claim and that Officer Darhower is now entitled to judgment as a matter of law. Officer Darhower also alleges that he is entitled to qualified immunity. The court will address these issues *seriatim*.

As a preliminary matter, the court notes that Hunte's failure to present any evidence in support of his Section 1983 claim is, by itself, fatal. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001) (stating that the non-moving party may not rest

upon mere allegations in the pleadings and must set forth specific facts by affidavits or other evidence showing that there is a genuine issue for trial); see also Goode v. Nash, No. 04-1781, 2007 WL 201007, at *4-5 (M.D. Pa. Jan. 23, 2007) (Conner, J.) (granting summary judgment when plaintiff failed to engage in any discovery to support his claims). It is highly unusual for a plaintiff to so wholly fail to pursue an action when that party is represented by counsel. Sworn members of the Pennsylvania bar are responsible for not only acting "with reasonable diligence and promptness in representing a client," but also for making "reasonable efforts to expedite litigation consistent with the interests of the client." See PA. RULES OF PROF'L CONDUCT 1.6, 3.2.[5]

Despite the inaction of Hunte's counsel, the court must address the substantive Section 1983 claim involved in this action and determine whether, based on Officer Darhower's uncontested statement of facts, he is entitled to judgment as a matter of law.

---

[5] The court is concerned because Attorney Monfredo represented a plaintiff in another case before the court with an unopposed, pending motion for summary judgment. (See Signor v. John Doe #1, 1:13-cv-2627, Doc. 10). The court granted summary judgment for the defendant based upon the lack of evidence from the plaintiff as well as the record evidence provided by the defendant. (See id., Docs. 16, 17, 18). The court also deemed another action abandoned when Attorney Monfredo, as court-appointed counsel, failed to file an amended complaint on behalf of his indigent client within the specified time period. (See Black v. City of Harrisburg, 1:11-cv-1912, Doc. 39). Following that dismissal, Attorney Monfredo sent his client a letter stating that he committed malpractice and advising his client that he could file a malpractice claim. (See Black v. Monfredo, 1:14-cv-788, Doc. 1).

Section 1983 provides a cause of action to redress violations of federal law committed by state officials. See 42 U.S.C. § 1983. Section 1983 is not a source of substantive rights, but merely a method for vindicating those rights otherwise protected by federal law. Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To establish a claim under Section 1983, the plaintiff must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)). It is undisputed that, at all times relevant to the instant action, Officer Darhower was "acting under color of state law." (Doc. 1, Ex. A ¶ 54; Doc. 4 ¶ 54).

In the case *sub judice*, Hunte seeks monetary damages for the alleged violation of his Fourth, Eighth, and Fourteenth Amendment rights against excessive use of force. (Doc. 9 ¶ 1). Excessive force claims arising from "an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989); Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir.1995) ("An excessive force claim under § 1983 arising out of law enforcement conduct is based on the Fourth

Amendment's protection from unreasonable seizures of the person.").[6] To prevail on an excessive force claim, Hunte must establish that a seizure occurred and that it was unreasonable. Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004). It is undisputed that the defendants seized Hunte through the initiation of a traffic stop and subsequent investigatory detention. See United States v. Givan, 320 F.3d 452, 458 (3d Cir. 2003); United States v. Fraguela-Casanova, 858 F. Supp. 2d 432, 439-40 (M.D. Pa. 2012) ("For Fourth Amendment purposes, a traffic stop is a seizure of both the driver and any occupants of a vehicle.").

The reasonableness of use of force in effecting a seizure depends upon a totality of the circumstances. Abraham v. Raso, 183 F.3d 279, 289 (3d Cir. 1999). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 397. This reasonableness determination "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. Moreover, "the calculus of reasonableness must embody allowance for the fact that police officers are often

---

[6] The court will dismiss the excessive use of force claims under the Eighth and Fourteenth Amendments. The Eighth Amendment applies only to excessive force claims by convicted prisoners. Graham, 490 U.S. at 398-99; Whitley v. Albers, 475 U.S. 312, 318-26 (1986). The Supreme Court also removed excessive force claims from the purview of the Due Process Clause of the Fourteenth Amendment. Graham, 490 U.S. at 395 ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive government conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

The court considers three main factors in determining reasonableness: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of officers or others, and (3) whether the suspect was actively resisting arrest. Graham, 490 U.S. at 396. Additional factors may include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir.1997); Fisher v. Matthews, 792 F. Supp. 2d 745, 774 (M.D. Pa. 2011).

Given the balancing of factors, the reasonableness inquiry is often an issue for the jury. Kopec, 361 F.3d at 777; Abraham, 183 F.3d at 290. However, the court may grant summary judgment in favor of the defendant when, after resolving all factual disputes in the plaintiff's favor, the court concludes that defendant's use of force was objectively reasonable under the circumstances. Kopec, 361 F.3d at 777; Abraham, 183 F.3d at 290.

Courts have previously found that the use of a taser to overcome a suspect's resistance may be reasonable. For example, in Gruver v. Borough of Carlisle, No. 4:05-cv-1206, 2006 WL 1410816 (M.D. Pa. May 19, 2006), the plaintiff appeared intoxicated and was behaving in an unruly manner. Id. at *2, 4. When the defendant

officers attempted to restrain him, the plaintiff continued to struggle against the officers for several minutes. Id. at *3-5. The plaintiff did not become subdued until he was shocked three times with a taser. Id. at *3, 5. The court held that the defendant officers did not use excessive force relative to the degree of resistence. Id. at *5; see also McNeil v. City of Easton, 694 F. Supp. 2d 375, 392-95 (E.D. Pa. 2010) (finding reasonableness when plaintiff likely possessed a weapon, posed threat to officers and others involved in a domestic dispute, and attempted to evade and resist arrest); Wargo v. Mun. of Monroeville, 646 F. Supp. 2d 777, 784-88 (W.D. Pa. 2009) (holding that initial and continued taser applications to subdue armed, belligerent plaintiff who refused to comply with orders to stop his approach, drop his gun, and lie down on the ground were reasonable).

In this case, the undisputed record shows that Hunte posed an immediate threat to the safety of the defendants and actively resisted arrest. When Corporal Howell asked Hunte to exit the vehicle, Hunte lunged towards the defendants against the car door. In response to Corporal Howell's effort to restrain him, Hunte attempted to close the window on Corporal Howell. Officer Darhower reasonably believed that Hunte was attempting to evade arrest by trapping Corporal Howell and driving away. Officer Darhower was also concerned that Hunte may have a weapon in the vehicle based upon his knowledge of Hunte's previous attempt to elude police involving a firearm.

Moreover, *prior to* deploying his taser, Officer Darhower gave Hunte several verbal warnings to open the window and exit the vehicle. When Hunte continued to

resist, Officer Darhower deployed the taser only once in drive stun mode to Hunte's lower chest and wrist. Even though Hunte finally became subdued, Hunte continued to ignore defendants' instructions to open the door, exit the vehicle, and lie down on the ground. However, Officer Darhower did not use the taser again and Hunte was eventually taken into custody. Hunte stated that he did not sustain any injuries and refused medical treatment. Based upon the existing record viewed in the light most favorable to Hunte, the court finds that Officer Darhower's use of force was objectively reasonable. Accordingly, Officer Darhower is entitled to judgment as a matter of law on Hunte's Section 1983 claim.[7]

## IV. Conclusion

For the above-stated reasons, the court will grant Officer Darhower's motion for summary judgment. (Doc. 8). An appropriate order follows.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: July 17, 2014

---

[7] Because the court finds that Officer Darhower did not violate Hunte's constitutional rights, the court need not determine whether Officer Darhower is entitled to qualified immunity.